**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GALINA VUGMAN,<br><br>                      Plaintiff,<br><br>          vs.<br><br>ALTERYX, INC., DEAN STOECKER, MARK ANDERSON, CHUCK CORY, JEFF HORING, ANJALI JOSHI, TIMOTHY I. MAUDLIN, CECE MORKEN, EILEEN SCHLOSS, and DAN WARMENHOVEN,<br><br>                      Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Galina Vugman ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**<u>SUMMARY OF THE ACTION</u>**

1.      Plaintiff brings this stockholder action against Alteryx, Inc. ("Alteryx" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Azurite Intermediate Holdings, Inc. ("Parent"), an affiliate of Clearlake Capital Group, L.P. ("Clearlake Capital"), through merger vehicle Azurite Merger Sub, Inc. ("Merger Sub"), and Insight Partners ("Insight," together with Parent, Clearlake Capital, and Merger Sub, "Clearlake"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 18, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent will acquire all of the remaining outstanding shares of Alteryx's Class A common stock and Class B common stock (collectively, the "Common Stock") not currently owned by Parent or Merger Sub at a price of $48.25 per share in cash. As a result, Alteryx will become a privately held company.

3.      Thereafter, on January 30, 2024, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction, followed by a Definitive Proxy Statement on February 9, 2024 (together, the "Proxy Statement").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own large illiquid blocks of Company stock which will be converted into merger consideration; (b) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (c) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.      The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the

Proposed Transaction and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Alteryx, provided by Alteryx management to the Special Committee of the Board (the "Special Committee") and the Special Committee's financial advisor Qatalyst Partners LP ("Qatalyst") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Qatalyst, if any, and provide to the Company and the Special Committee.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

**PARTIES**

7.     Plaintiff is a citizen of Florida, and at all times relevant hereto, has been an Alteryx stockholder.

8.     Defendant Alteryx operates in analytic process automation business in the Asia-Pacific, Europe, the Middle East, Africa, North America, and internationally. The Company is incorporated in Delaware and has its principal place of business at 17200 Laguna Canyon Road, Irvine, CA 92618. Shares of Alteryx common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "AYX."

9.     Defendant Dean Stoecker ("Stoecker") has been Chairman of the Company Board at all relevant times. The December 18, 2023, press release states that Stoecker holds approximately 49% of the voting shares, yet the Proxy Statement acknowledges that Stoecker holds a 51.24% voting power, both personally and through his affiliated trusts and LLCs, therefore giving him a majority voting power.

10.     Defendant Mark Anderson ("Anderson") has been a director of the Company at all relevant times. Additionally, Defendant Anderson serves as the Chief Executive Officer ("CEO") of the Company.

11.     Defendant Chuck Cory ("Cory") has been a director of the Company at all relevant times.

12.     Defendant Jeff Horing ("Horing") has been a director of the Company at all relevant times.

13.     Defendant Anjali Joshi ("Joshi") has been a director of the Company at all relevant times.

14.     Defendant Timothy I. Maudlin ("Maudlin") has been a director of the Company at all relevant times.

15.     Defendant CeCe Morken ("Morken") has been a director of the Company at all relevant times.

16.     Defendant Eileen Schloss ("Schloss") has been a director of the Company at all relevant times.

17.     Defendant Dan Warmenhoven ("Warmenhoven") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Clearlake is a private equity group that invests in communications, healthcare, and industrial companies.

20.     Non-Party Insight is a global software investor that partners with high-growth technology, software, and Internet startup companies.

21.     Non-Party Parent is an affiliate of Clearlake.

22.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.    Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

26.    Alteryx operates in analytic process automation business in the Asia-Pacific, Europe, the Middle East, Africa, North America, and internationally.

27.    On July 5, 2023, Alteryx management reviewed Alteryx's preliminary operational and financial results for the second quarter of 2023, including that Alteryx's (1) annualized recurring revenue was expected to be below Alteryx's publicly disclosed guidance; and (2) customer pipeline conversion at the conclusion of the second quarter of 2023 had been less robust than expected. Alteryx management reviewed the impact of Alteryx's second quarter results on their expectations for Alteryx's performance for the remainder of 2023 and over the longer term, noting that, in light of recent operating results and trends, Alteryx's management believed that (1) full year 2023 annualized recurring revenue public guidance would need to be lowered significantly; and (2) expectations for Alteryx's future performance would need to be significantly revised.

28.    On July 6, 2023, and in response to such reporting, Alteryx management then presented an updated draft of Alteryx's long-term operating and financial plan for the second half of 2023 through 2026, including updated assumptions and estimates for Alteryx's future

operational financial performance based on Alteryx's results for the second quarter of 2023 and trends in Alteryx's business and industry.

29.     In a press release on November 6, 2023, for the Third Quarter 2023 Financial Results, the Company highlighted its performance results and financial success. For example, the Company reported Revenue for the third quarter of 2023 was $232 million, an increase of 8%, compared to revenue of $215 million in the third quarter of 2022; GAAP gross profit for the third quarter of 2023 was $198 million, or a GAAP gross margin of 85%, compared to GAAP gross profit of $183 million, or a GAAP gross margin of 85%, in the third quarter of 2022; and Non-GAAP gross profit for the third quarter of 2023 was $207 million, or a non-GAAP gross margin of 89%, compared to non-GAAP gross profit of $192 million, or a non-GAAP gross margin of 89%, in the third quarter of 2022.

30.     Speaking on the results, CEO Anderson stated, "Alteryx delivered a solid Q3, with key growth and profitability metrics exceeding our prior outlook, driven by improved execution and cost discipline."

31.     Anderson continued that sentiment: "Gross retention held at a healthy level as customers continued to demonstrate their commitment to the Alteryx Analytics Platform and we remain focused on the vision we have set forth with Alteryx AiDIN, our generative AI and machine learning technologies, as well as our growing portfolio of cloud-connected offerings."

32.     The financial results are not an anomaly, but rather, are indicative of a trend of continued success for Alteryx. Based upon these positive results and outlook, the Company is likely to have future success.

33.     Despite this upward trajectory, the Individual Defendants have caused Alteryx to enter into the Proposed Transaction without providing requisite information to Alteryx stockholders such as Plaintiff.

COMPLAINT

*The Flawed Sales Process*

34.    As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

35.    The Proxy Statement fails to adequately disclose why the Special Committee was not bestowed the power to veto a potential transaction not in the best interest of stockholders, but said power was still left with the Company Board despite there being clear conflicts of interest since Stoecker holds 51.24% voting power giving him majority voting right.

36.    The Proxy Statement fails to adequately disclose why there will be no "minority of the majority" vote in light of Stoecker holding a 51.24% voting power over the Company and could personally approve the Proposed Transaction despite any potential votes in rejection of the same. Seemingly placing Stoecker at direct odds with Company public stockholders.

37.    Moreover, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Clearlake, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement.

38.    The Proxy Statement fails to adequately disclose Company Management's failure to raise the financial projections in response to the positive Third Quarter Financial Results after Company Management was quick to lower the financial projections in response to the suboptimal Second Quarter Financial Results seemingly solidifying lower bids as opposed to being in a position to demand a higher per share bids.

39.    Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

40.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

41.    On December 18, 2023, Alteryx issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> IRVINE, Calif., Dec. 18, 2023 /PRNewswire/ -- Alteryx, Inc. (NYSE: AYX), the Analytics Cloud Platform company, today announced that it has entered into a definitive agreement to be acquired by Clearlake Capital Group, L.P. (together with certain of its affiliates, "Clearlake") and Insight Partners ("Insight"), two global private equity firms, in a transaction valued at $4.4 billion, including debt. Upon completion of the transaction, Alteryx will become a privately held company.

> Under the terms of the agreement, Alteryx stockholders will receive $48.25 per share in cash for each share of Alteryx Class A or Class B common stock that they own. The per share purchase price represents a 59% premium to Alteryx's unaffected closing stock price on September 5, 2023, the last full trading day prior to media reports regarding a possible sale transaction.

> "We're pleased to announce our agreement with Clearlake and Insight. In addition to delivering significant and certain cash value to our stockholders, this transaction will provide increased working capital and industry expertise, and the flexibility as a private company. Together, we will make investments that matter most to our customers and accelerate our mission of harnessing the power of analytics to enable customers all over the world to transform data into a breakthrough," said Mark Anderson, CEO of Alteryx. "Over the past several years, we've executed a comprehensive transformation strategy to enhance our go-to-market capabilities and establish a strong cloud and AI innovation roadmap. We are excited to partner with Clearlake and Insight for the next stage of Alteryx's journey. Both Clearlake and Insight have great respect for our mission, people and technology, and they look forward to helping our company – and in turn our customers and partners – be even more successful. I would like to thank our talented employees, whose hard work and dedication have helped us reach this milestone and will continue to fuel our success."

> "When we founded Alteryx in 1997, we did so with a vision for the future of data science and analytics. Today, Alteryx stands out as an industry leader with a differentiated platform that scales data democratization in a governed manner," said Dean Stoecker, Co-Founder and Executive Chairman of the Alteryx Board of Directors. "Our agreement with Clearlake and Insight validates the strength of our business and the value of Alteryx's capabilities and innovation."

> "As organizations become increasingly data driven and focused on utilizing artificial intelligence (AI) technology, we see a tremendous growth opportunity for Alteryx's new AI products and feature-rich cloud solutions and to further its reputation as an innovator in the data preparation and data analytics markets. We

believe Clearlake's sector expertise and O.P.S.® framework for supporting company growth, coupled with Alteryx's talented team and impactful mission, is a winning formula for enterprises looking to use data to improve and scale their businesses," said Behdad Eghbali, Co-Founder and Managing Partner, and Prashant Mehrotra, Partner, at Clearlake. "We have long appreciated the Company's best-in-class technology that enables users to transform data into insights, and we are thrilled to support Alteryx as it continues to push the industry forward with generative AI and machine learning SaaS technologies, as well as its growing portfolio of cloud-connected offerings."

"Insight first met Dean in 2006. After witnessing Alteryx's evolution into a data prep and analytics leader, our partnership began in 2014, coinciding with Alteryx's expansion into new verticals and the development of a top-tier product," said Deven Parekh and Ryan Hinkle, each a Managing Director at Insight Partners. "Alteryx's success stands as a testament to their visionary founder' exceptional ability in shaping the future of software and technology – a journey Insight takes great pride in being a part of. We're looking forward to opening this new chapter with Alteryx as they advance into the next phase of their growth journey, focusing on cloud and AI/ML to create winning products."

**Transaction Details**

The transaction, which was approved and recommended by an independent Special Committee of Alteryx's Board of Directors and then approved by Alteryx's Board of Directors, is expected to close in the first half of 2024, subject to customary closing conditions and approvals, including approval by Alteryx stockholders and the receipt of required regulatory approvals. Mr. Stoecker holds approximately 49% of Alteryx's voting power and has entered into a customary voting agreement to support the transaction. The transaction is not subject to a financing condition or a "majority of the minority" stockholder vote.

Upon completion of the transaction, Alteryx's common stock will no longer be listed on any public stock exchange.

*Potential Conflicts of Interest*

42.     The breakdown of the benefits of the deal indicates that Alteryx insiders and Clearlake are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Alteryx.

43.     Company insiders currently own large, illiquid portions of Company stock, and

Company options all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Shares of Common Stock Held Directly or Indirectly[1] | | In-the-Money Vested Alteryx Options[2] | | Alteryx RSUs [3] | | |
|---|---|---|---|---|---|---|---|
| | Number of Shares (#) | Value of Shares ($) | Number of Shares Subject to Vested Portion (#) | Value of Shares Subject to Vested Portion ($) | Number of Shares (#) | Value ($) | Total ($) |
| Mark Anderson | 146,209 | 7,054,584 | — | — | 313,721 | 15,137,038 | 22,191,623 |
| Kevin Rubin | 79,703 | 3,845,670 | 27,232 | 648,153 | 102,978 | 4,968,689 | 9,462,511 |
| Paula Hansen | 54,452 | 2,627,309 | — | — | 112,690 | 5,437,293 | 8,064,602 |
| Suresh Vittal | 104,839 | 5,058,482 | — | — | 88,627 | 4,276,253 | 9,334,735 |
| Christopher M. Lal | 48,264 | 2,328,738 | 9,389 | 198,671 | 54,946 | 2,651,145 | 5,178,554 |
| Charles R. Cory | 9,390 | 453,068 | 105,156 | 4,074,795 | 5,520 | 266,340 | 4,794,203 |
| Jeffrey L. Horing[4] | 1,003,543 | 48,420,950 | — | — | 5,520 | 266,340 | 48,687,290 |
| Anjali Joshi | 7,806 | 376,640 | — | — | 6,714 | 323,951 | 700,590 |
| Timothy I. Maudlin | 41,171 | 1,986,501 | 36,451 | 1,325,723 | 5,520 | 266,340 | 3,578,564 |
| Cece Morken | 9,308 | 449,111 | — | — | 7,495 | 361,634 | 810,745 |
| Eileen M. Schloss | 6,715 | 323,999 | — | — | 5,520 | 266,340 | 590,339 |
| Dean A. Stoecker | 7,235,899 | 349,132,127 | 340,971 | 9,988,071 | 5,520 | 266,340 | 359,386,538 |
| Dan Warmenhoven | 9,308 | 449,111 | — | — | 7,495 | 361,634 | 810,745 |

44.    Moreover, certain employment agreements with certain Alteryx executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($)(4) |
|---|---|---|---|---|
| Mark Anderson | 1,750,000 | 15,137,038 | 32,558 | 16,919,596 |
| Kevin Rubin | 846,000 | 4,620,372 | 30,968 | 5,497,340 |
| Paula Hansen | 1,150,000 | 5,437,293 | 30,968 | 6,618,261 |
| Suresh Vittal | 866,250 | 4,276,253 | 30,968 | 5,173,471 |
| Christopher Lal | 720,000 | 2,651,145 | 25,745 | 3,396,890 |

COMPLAINT

| Name | Base Salary Severance ($) | Target Incentive Opportunity Severance ($) | Total ($) |
|------|--------------------------:|-------------------------------------------:|----------:|
| Mark Anderson | 1,050,000 | 700,000 | 1,750,000 |
| Kevin Rubin | 470,000 | 376,000 | 846,000 |
| Paula Hansen | 575,000 | 575,000 | 1,150,000 |
| Suresh Vittal | 495,000 | 371,250 | 866,250 |
| Christopher Lal | 450,000 | 270,000 | 720,000 |

45.     The Proxy Statement fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.     Thus, while the Proposed Transaction is not in the best interests of Alteryx, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

47.     The Alteryx Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

48.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

a.      Why the Special Committee was not bestowed the power to veto a potential transaction not in the best interest of stockholders, but that said

power was still left with the Company Board despite there being clear conflicts of interest since Stoecker holds 51.24% voting power giving him majority voting right;

b.   Why there will be no "minority of the majority" vote in light of Stoecker holding a 51.24% voting power over the Company and could personally approve the Proposed Transaction despite any potential votes in rejection of the same. Seemingly placing Stoecker at direct odds with Company public stockholders;

c.   Whether the confidentiality agreements entered into by the Company with Clearlake differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d.   Company Management's failure to raise the financial projections in response to the positive Third Quarter Financial Results after Company Management was quick to lower the financial projections in response to the suboptimal Second Quarter Financial Results seemingly solidifying lower bids as opposed to being in a position to demand a higher per share bids; and

e.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Alteryx Financial Projections*

49.   The Proxy Statement fails to provide material information concerning financial projections for Alteryx provided by Alteryx management to the Special Committee and Qatalyst and relied upon by Qatalyst in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

50.   Notably, the Proxy Statement reveals that as part of its analyses, Qatalyst reviewed: "the company management plan and illustrative extrapolations prepared by Alteryx management

1  (which is referred to in this section of the proxy statement, collectively, as the "Financial
2  Projections")."

3      51.    The Proxy Statement should have, but fails to provide, certain information in the
4  projections that Alteryx management provided to the Special Committee and Qatalyst. Courts have
5  uniformly stated that "projections … are probably among the most highly-prized disclosures by
6  investors.  Investors can come up with their own estimates of discount rates or [] market multiples.
7  What they cannot hope to do is replicate management's inside view of the company's prospects."
8  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

9      52.    The Proxy Statement further fails to adequately describe Company Management's
10  reasoning for failing to update its financial projections after the positive momentum gained in the
11  third quarter yet were so quick to drop the financial projections after a poor second quarter. Thus,
12  potentially leaving money on the table in the form of bids made by the prospective buyer seeing
13  the Company rebound in a positive manner.

14      53.    With regards to the *Financial Projections*, the Proxy Statement fails to disclose:

15      a.   The inputs, metrics, and assumptions used to determine the compound annual
16  growth rate for Revenue of 11% from 2024 through 2033;

17      b.   The inputs, metrics, and assumptions used to determine Revenue for the years
18  2024 through 2033;

19      c.   The inputs, metrics, and assumptions used to determine Non-GAAP Operating
20  Income, including specifically: GAAP operating income (loss), stock-based
21  compensation expense, payroll tax related to stock-based compensation,
22  acquisition related adjustments, including, amortization of intangible assets,
23  impairments of long-lived assets, cost optimization charges, and tax
24  adjustments; and

25      d.   The inputs, metrics, and assumptions used to determine Unlevered Free Cash
26  Flow, including specifically: cash taxes, depreciation and amortization, capital

27
28

1    expenditures, capitalized software development costs, and changes in net

2    working capital.

3        54.    The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to

4    GAAP metrics utilized in the projections.

5        55.    This information is necessary to provide Plaintiff, in her capacity as a Company

6    stockholder, with a complete and accurate picture of the sales process and its fairness. Without this

7    information, Plaintiff is not fully informed as to Defendants' actions, including those that may

8    have been taken in bad faith, and cannot fairly assess the process.

9        56.    Without accurate projection data presented in the Proxy Statement, Plaintiff is

10   unable to properly evaluate the Company's true worth, the accuracy of the Qatalyst's financial

11   analyses, or make an informed decision whether to vote her shares in favor of the Proposed

12   Transaction.   As such, the Board has violated the Exchange Act by failing to include such

13   information in the Proxy Statement.

14   *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

15   *Qatalyst*

16       57.    In the Proxy Statement, Qatalyst describes its fairness opinion and the various

17   valuation analyses performed to render such opinion. However, the descriptions fail to include

18   necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

19   assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations

20   or evaluate the fairness opinions.

21       58.    With respect to the *Illustrative Discounted Cash Flow Analysis*, the Proxy

22   Statement fails to disclose:

23       a.    The implied net present value of the estimated standalone unlevered free cash flows

24       of the Company, and the inputs, metrics, and assumptions used to determine same;

25       b.    The inputs, metrics, and assumptions used to determine the discount rates of

26       11.25% to 13.75% utilized;

27       c.    The estimated weighted average cost of capital for the Company utilized;

28

d. The inputs, metrics, and assumptions used to determine the perpetuity growth rates ranging from 3.0% to 6.0% utilized; and

e. The number of fully diluted shares of Company common stock outstanding as of December 15, 2023, utilized.

59. With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose:

a. The specific third-party research analysts whose estimates were relied upon;

b. The inputs, metrics, and assumptions used to determine the Enterprise Value for each of the selected companies;

c. The specific inputs, metrics, and assumptions used to determine the CY2024E Revenue Multiple for each of the selected companies;

d. The specific inputs, metrics, and assumptions used to determine the multiples range of 3.0x to 5.5x utilized; and

e. The number of fully diluted shares of the Company as of December 15, 2023, utilized.

60. With respect to the *Selected Transactions Analysis*, the Definitive Proxy Statement fails to disclose the following:

a. The specific date on which each selected precedent transaction closed;

b. The aggregate value of each selected precedent transaction;

c. The specific inputs, metrics, and assumptions used to determine the NTM Revenue Multiple for each of the selected transactions utilized;

d. The specific inputs, metrics, and assumptions used to determine the utilized NTM Revenue Multiples representative multiple range of 3.5x to 7.1x;

e. The specific inputs, metrics, and assumptions used to determine the NTM EBITDA Multiple for each of the selected transactions utilized;

f. The specific inputs, metrics, and assumptions used to determine the utilized NTM EBITDA Multiples representative multiple range of 15.3x to 31.8x; and

COMPLAINT

g.   The number of fully diluted shares of the Company as of December 15, 2023, utilized.

61.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

62.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Alteryx stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

63.   Plaintiff repeats all previous allegations as if set forth in full herein.

64.   Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

65.   Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

66.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

67.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

68.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

69.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

70.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

COMPLAINT

1

2

3

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

4       71.     Plaintiff repeats all previous allegations as if set forth in full herein.

5       72.     The Individual Defendants were privy to non-public information concerning the

6   Company and its business and operations via access to internal corporate documents, conversations

7   and connections with other corporate officers and employees, attendance at management and

8   Board meetings and committees thereof and via reports and other information provided to them in

9   connection therewith.  Because of their possession of such information, the Individual Defendants

10  knew or should have known that the Proxy Statement was materially misleading to Plaintiff in her

11  capacity as a Company stockholder.

12      73.     The Individual Defendants were involved in drafting, producing, reviewing and/or

13  disseminating the materially false and misleading statements complained of herein.  The Individual

14  Defendants were aware or should have been aware that materially false and misleading statements

15  were being issued by the Company in the Proxy Statement and nevertheless approved, ratified

16  and/or failed to correct those statements, in violation of federal securities laws.  The Individual

17  Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual

18  Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy

19  Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause

20  it to be corrected.

21      74.     The Individual Defendants also were able to, and did, directly or indirectly, control

22  the conduct of Alteryx's business, the information contained in its filings with the SEC, and its

23  public statements.  Because of their positions and access to material non-public information

24  available to them but not the public, the Individual Defendants knew or should have known that

25  the misrepresentations specified herein had not been properly disclosed to and were being

26  concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result,

27

28

1  the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore

2  responsible and liable for the misrepresentations contained herein.

3      75.    The Individual Defendants acted as controlling persons of Alteryx within the

4  meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the

5  Individual Defendants had the power and authority to cause Alteryx to engage in the wrongful

6  conduct complained of herein.   The Individual Defendants controlled Alteryx and all of its

7  employees.  As alleged above, Alteryx is a primary violator of Section 14 of the Exchange Act and

8  SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to

9  section 20(a) of the Exchange Act.

10      WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the

11  Defendants, as follows:

12      A.    Enjoining the Proposed Transaction;

13      B.    In the event Defendants consummate the Proposed Transaction, rescinding it and

14  setting it aside or awarding rescissory damages to Plaintiff;

15      C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate

16  a Proxy Statement that does not contain any untrue statements of material fact and that

17  states all material facts required in it or necessary to make the statements contained therein

18  not misleading;

19      D.    Awarding Plaintiff the costs of this action, including reasonable allowance for

20  Plaintiff's attorneys' and experts' fees; and

21      E.    Granting such other and further relief as this Court may deem just and proper.

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

3

4

Dated: February 12, 2024                      **BRODSKY SMITH**

5

By:  *Evan J. Smith*
_____

6

Evan J. Smith, Esquire (SBN 242352)

esmith@brodskysmith.com

7

Ryan P. Cardona, Esquire (SBN 302113)

rcardona@brodskysmith.com

8

9595 Wilshire Blvd., Ste. 900

Phone: (877) 534-2590

9

Facsimile (310) 247-0160

10

*Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT